THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM EASLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-02112-GCS |
| | ) |
| JOSEPH C. GARRETT, | ) |
| KARL R. BRADFORD and | ) |
| DARREN D. GALLOWAY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff William Easley filed this action pursuant to 42 U.S.C. § 1983 while he was an inmate at Shawnee Correctional Center ("Shawnee").[1] (Doc. 1). In the Complaint, Plaintiff claims that a prison guard used excessive force against him and then punished him on false disciplinary charges. He seeks money damages. *Id*. at p. 8-9.

The Complaint is subject to review under 28 U.S.C. § 1915A.[2] Section 1915A requires the Court to screen prisoner complaints and filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the complaint that is legally frivolous or malicious, fails to state a claim, or requests money damages from an immune defendant

---

[1]   At the time he filed his Complaint, Plaintiff was an inmate in the custody of the Illinois Department of Corrections (Inmate #R11054), but he has since been released. (Doc. 9).

[2]   The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a magistrate judge (Doc. 7) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

must be dismissed. *See* 28 U.S.C. § 1915A(b). The factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

On May 2, 2023, C/O Garrett "sucker punched" Plaintiff in the stomach so hard that he defecated. (Doc. 1, p. 8). Just before the incident, Plaintiff was using the phone in the prison's dayroom after returning from call pass. When Garrett observed this, the officer gave him the option of locking up during his dayroom time or receiving a disciplinary ticket. Plaintiff chose the ticket. He returned to his cell, and Garrett locked him up. While doing so, the officer called him a "pus*y." *Id*. Plaintiff responded, "[n]o sir, that's what you are." *Id*. Garrett then entered the cell and punched Plaintiff in the stomach. *Id*.

After doing so, Garrett asked Plaintiff for his identification card. (Doc. 1, p. 8). Plaintiff told the officer that it was on the bed. *Id.* Instead of grabbing it, however, Garrett pinned Plaintiff against the wall and repeatedly asked to "see if [Plaintiff] ha[s] balls or a pus*y." *Id.* Plaintiff calmly asked the officer to get off him. When Garrett finally retreated, Plaintiff handed the officer his ID. *Id*.

Garrett later returned to Plaintiff's cell with Lieutenant O'Quendo, and they both escorted Plaintiff to segregation. (Doc. 1, p. 8). Once there, Plaintiff dropped his pants and underwear to show the lieutenant that he defecated when Garrett punched him. *Id.* Plaintiff began to cry. *Id.* He asked Garrett to see a nurse and to file a complaint pursuant

to the Prison Rape Eliminate Act ("PREA"). *Id.* He received no response to either request. *Id.*

Plaintiff filed an emergency grievance the same day. (Doc. 1, p. 9). He checked the box indicating that he faced a substantial risk of imminent personal harm. Plaintiff explained that he feared for his safety, and he requested a transfer. The Chief Administrative Officer denied the grievance as a non-emergency on May 12, 2023. The Warden's Office and Darren Galloway's names were stamped on the returned document, alongside instructions to resubmit the grievance through the normal channels. *Id.* Plaintiff maintains that he exhausted all available remedies before filing suit. (Doc. 14).

Plaintiff also filed a PREA complaint and went on a hunger strike until prison officials responded to it. (Doc. 1, p. 8). A week later, an investigation was finally launched, and photos were taken of his bruises for the first time. However, Lieutenant Banks denied his request for a transfer. *Id.*

Garrett also fabricated a ticket against Plaintiff on May 2, 2023, citing him for disobeying a direct order, unauthorized movement, and insolence. (Doc. 1, p. 9). At his prison disciplinary hearing, Plaintiff was allowed to testify. He asked Lieutenant Bradford to review video footage of the incident, but the lieutenant refused to do so. Plaintiff was found guilty and punished with two weeks of segregation, one month of C-grade status, and no commissary, phone privileges, or yard privileges. While in segregation, he was exposed to a bug-infested cell and filthy showers. *Id.*

On May 27, 2023, Plaintiff became suicidal and had a panic attack. Lieutenant O'Quendo was a member of the crisis team that responded. He told the plaintiff that he was "railroaded" by Garrett and Lieutenant Bradford. *Id.*

### PRELIMINARY DISMISSALS

Plaintiff mentions the following individuals in the statement of his claim, but he does not identify them as defendants in the Complaint: Lieutenant O'Quendo and Lieutenant Banks. The Court will not treat these individuals as defendants, and all claims against them are considered dismissed without prejudice. *See, e.g.*, FED. R. CIV. PROC. 10(a) (noting that the title of the complaint "must name all the parties").

### DISCUSSION

Based on the allegations, the Court finds it convenient to designate the following enumerated counts in the *pro se* Complaint:

**Count 1:** Eighth Amendment claim against Garrett for using excessive force against Plaintiff by punching him in the stomach on May 2, 2023.

**Count 2:** Eighth Amendment claim against Garrett for calling Plaintiff a "pus*y" and asking to see if he has "balls or a pus*y" while pinning him against a wall on May 2, 2023, before ignoring his request to file a PREA complaint.

**Count 3:** Eighth Amendment claim against Garrett for ignoring Plaintiff's request to see a nurse on May 2, 2023.

**Count 4**: Eighth and/or Fourteenth Amendment claim against Galloway for denying Plaintiff's emergency grievance on May 12, 2023.

**Count 5**: Fourteenth Amendment claim against Garrett and/or Bradford for depriving Plaintiff of a protected liberty interest without due process by finding him guilty of false disciplinary charges without reviewing video footage and punishing him with two weeks in segregation and a month of C-grade and no commissary/phone/yard privileges.

>   **Count 6:** Eighth Amendment claim against Defendants for subjecting Plaintiff to a bug-infested cell with dirty showers from May 2-16, 2023.

**Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

### Count 1

The Court first considers Plaintiff's claim that C/O Garrett used excessive force against him on May 2, 2023. A prison guard's intentional use of excessive force against a prisoner without penological justification amounts to cruel and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34, 37(2010). A prisoner bringing an excessive force claim against a guard must show that the assault was carried out "maliciously and sadistically" rather than as part of a "good-faith effort to maintain or restore discipline." *Id*. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). According to the allegations, Garrett entered Plaintiff's cell and "sucker punched" him so hard that he defecated on May 2, 2023. This description suggests that Garrett acted maliciously and sadistically. Therefore, Count 1 shall proceed against this defendant.

### Count 2

Plaintiff next claims that Garrett pinned him against a wall while ordering the plaintiff to show him whether he has "balls or a pus*sy." (Doc. 1, p. 8). Verbal harassment, even of a sexual nature, typically does not violate the Eighth Amendment. *See DeWalt v.*

---

[3] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

*Carter*, 224 F.3d 607, 612 (7th Cir. 2000). This is particularly true when the harassment occurs in an isolated incident. *See, e.g.*, *Moore v. The Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1350 (7th Cir. 1985) (stating that "threatening or angry looks, mutterings and screamed profanities" are not actionable under § 1983). However, sexual harassment that causes psychological trauma or is accompanied by physical conduct that places a plaintiff in danger of assault can state an Eighth Amendment claim. Garrett allegedly made sexually suggestive and threatening comments to Plaintiff when he demanded to see if Plaintiff has "balls or a pus*y" while pinning him against a wall just after punching him in the stomach. *Id.* at p. 8. This portion of Count 2 shall proceed against Garrett.

However, Plaintiff articulates no claim against Garrett, or anyone else, for ignoring his request for a PREA complaint form. PREA does not give rise to a private cause of action under the Eighth or Fourteenth Amendment. *See, e.g.*, *Truly v. Moore*, No. 16-cv-783-NJR, 2017 WL 661507, *4 (S.D. Ill. Feb. 17, 2017) (collecting cases and dismissing PREA claim brought under circumstances like those described here). The portion of Count 2 consisting of a PREA claim against Garrett shall be dismissed without prejudice.

**Count 3**

The Court turns to Plaintiff's request to see a nurse on May 2, 2023. An Eighth Amendment claim arising from the denial of medical care contains an objective and a subjective component. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the objective component, a plaintiff must demonstrate that he suffered from an objectively, sufficiently serious medical condition. *Id.* The subjective component requires the plaintiff to demonstrate that the defendant

responded to the medical need with deliberate indifference. *Id*. at 653. Plaintiff offers no description of injuries that Garrett inflicted, so the allegations do not satisfy the objective component of this claim at screening. Count 3 shall be dismissed without prejudice against Garrett.

### Count 4

Plaintiff also claims that Galloway denied his emergency grievance in violation of his constitutional rights. The decision to deny an inmate's grievance, after an incident occurs, does not amount to a constitutional deprivation, without more. *See McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013). "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007). Based on the allegations, Galloway did not cause or contribute to any underlying injury, so Count 4 shall be dismissed without prejudice against him.

### Count 5

Plaintiff also challenges the disciplinary action taken against him in the wake of his assault. The Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law. *See* U.S. CONST. amend. XIV. When analyzing claims based on the denial of due process in prison disciplinary proceedings, the court considers: (1) whether there was a protected liberty interest at stake that necessitated due process protections in the first place; and (2) whether the disciplinary hearing was conducted in accordance with due process protections. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

The allegations do not suggest that a protected liberty interest was at stake. Plaintiff received two weeks of segregation, along with a month of C-grade and related

restrictions on commissary, phone, and yard privileges. While in segregation, he complains, rather vaguely, of dirty showers and pests.

Absent an "atypical and significant hardship," the Court can find no protected liberty interest that was at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). When considering this, courts look to the duration of confinement in segregation and the conditions an inmate encountered there. For shorter terms, no inquiry into the specific conditions is even necessary. Neither the duration of Plaintiff's punishment (2 weeks in segregation) nor the uncomfortable conditions he faced there (pests and dirty showers) support a finding that Plaintiff faced the deprivation of a protected liberty interest. *See also Thomas v. Ramos,* 130 F.3d 754, 761 (7th Cir. 1997) (70 days); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (90 days); *Beamon v. Pollard,* No. 17-1269, 711 Fed. Appx. 794, 795 (7th Cir. Feb. 21, 2018) (135 days); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (240 days). *See also Thomas*, 130 F.3d at 762, n.8 (no protected liberty interest implicated in loss of certain privileges and demotion to C-grade); *Vasquez v. Braemer*, No. 13-3379, 586 Fed. Appx. 224, 228 (7th Cir. Sept. 23, 2014) (noting no constitutional violation where inmate was limited to 2 showers and 4 hours of outside recreation per week). Without a protected liberty interest, there was no right to due process protections. Accordingly, Count 5 shall be dismissed without prejudice.

### Count 6

Finally, Plaintiff claims he was subjected to unconstitutional conditions of confinement for two weeks in segregation, where he was exposed to pests and dirty showers. An Eighth Amendment claim for unconstitutional conditions of confinement

arises from a prison official's deliberate indifference to conditions that pose a substantial risk to an inmate's health or safety. *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Conditions that are only inconvenient, uncomfortable, or unpleasant support no claim. The allegations vaguely describe conditions that are unpleasant and resulted in no harm to Plaintiff. In addition, no defendant is named in connection with them. Accordingly, Count 6 shall be dismissed without prejudice for failure to state a claim.

## PENDING MOTION

Plaintiff's Motion for Recruitment of Counsel (Doc. 8) is **DENIED without prejudice**. When presented with a motion for counsel filed by an indigent litigant, a district court considers whether the plaintiff has made reasonable attempts to secure counsel. *See Navejar v Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). If so, the court considers "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Id*. Plaintiff has not satisfied either requirement.

Although Plaintiff describes some efforts to find an attorney, he includes no actual responses from an attorney or law firm that declined to represent him in this particular case. In addition, Plaintiff appears competent to litigate his claims at this stage. Plaintiff's Complaint survives screening on two straightforward claims against one defendant. Plaintiff has affirmatively asserted that he exhausted his available remedies before filing suit, and he wishes to proceed with this matter. The Court will allow him to proceed *pro se* at this time. If this case becomes too difficult to litigate at some later point in time, Plaintiff may file a new motion for court-recruited counsel.

DISPOSITION

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A. **COUNTS 1** and **2** (except PREA claim) will proceed against **C/O GARRETT** in his individual capacity.[4]

**IT IS ORDERED** that **COUNTS 2 (PREA claim), 3, 4, 5,** and **6** against **ALL DEFENDANTS** are **DISMISSED** without prejudice for failure to state a claim for relief. The Clerk's Office is **DIRECTED** to **TERMINATE** Defendants **KARL R. BRADFORD** and **DARREN D. GALLOWAY** as parties in CM/ECF.

With regard to Counts 1 and 2, the Clerk of Court shall prepare for **C/O GARRETT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to the Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not

---

[4] Plaintiff is again **WARNED** that his failure to exhaust all available administrative remedies for these two claims *before filing suit*, as required by the Prison Litigation Reform Act, will result in the dismissal of these claims at a later stage in the case, when it may be too late to pursue the claims in a separate action due to the 2-year statute of limitations. *See* 42 U.S.C. § 1997e.

known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2(b), Defendant should only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes. The Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 25, 2024.**

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2024.06.25 13:54:50 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE

The Court will take the necessary steps to notify the defendant of your lawsuit and serve him with a copy of your Complaint. After service has been achieved, the defendant will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Answer, but it is entirely possible that it will take **90 days** or more. Once the defendant answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, in order to give the defendant notice and an opportunity to respond to those motions. Motions filed before the defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.**